FILED

AUG 11 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AO 91 (Rev. 11/11) Criminal Complaint

AUSA Kartik K. Raman (312) 469-6026

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DANIEL RAYMOND GLAUS

CASE NUMBER: 16CR 521

MAGISTRATE JUDGE MASON

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about June 16, 2016, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 1204(a) | did knowingly remove, and attempt to remove, a child, namely Minor Child A, from the United States with intent to obstruct the lawful exercise of parental rights of Minor Child A's mother. |

This criminal complaint is based upon these facts:

X Continued on the attached sheet.

DANIEL NUGENT
Special Agent, Homeland Security Investigations (HSI)

Sworn to before me and signed in my presence.

Date: August 11, 2016

*Judge's signature*

City and state: Chicago, Illinois

MICHAEL T. MASON, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT )
)
NORTHERN DISTRICT OF ILLINOIS )

**AFFIDAVIT**

I, DANIEL NUGENT, being duly sworn, state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, and have been so employed for approximately seven years. Prior to my employment with HSI, I served as a United States Customs and Border Protection Officer from approximately 2003 through 2008.

2. I am currently assigned to the HSI O'Hare International Airport office, where I conduct investigations relating to alleged violations of federal criminal laws, including the smuggling of people and merchandise both into and out of the United States. In conducting these investigations, I have used a variety of investigative techniques and resources, including, but not limited to, search warrants, visual surveillance, electronic surveillance, and the debriefing of defendants, witnesses and informants.

3. This affidavit is submitted for the limited purpose of establishing probable cause that, on or about June 16, 2016, DANIEL RAYMOND GLAUS did commit the offense of International Parental Kidnapping, in violation of Title 18, United States Code, Section 1204(a).

4. The statements in this affidavit are based on: my personal knowledge; information received from other law enforcement officers with knowledge regarding relevant facts; information provided by witnesses, including Individual A, who, as explained below, is the lawful custodial parent of Minor Child A; documents produced by various entities; a state search warrant executed on GLAUS's last known residence; CBP and United States Department of State database information; surveillance video footage from O'Hare International Airport; my

experience and training; and the experience of other agents. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

**A. Relevant Background**

5. According to Individual A and court records from the Circuit Court of Rock Island County, Illinois, on or about October 12, 2005, Individual A, a citizen of Myanmar, married DANIEL RAYMOND GLAUS, a United States citizen, in Bangkok, Thailand.[1]

6. According to Rock Island County court records, Minor Child A was born to Individual A and GLAUS in Bangkok, Thailand, or on about September 13, 2009.

7. According to United States Citizenship and Immigration Services database information, on or about April 19, 2012, Individual A was granted United States Permanent Resident status after her marriage to GLAUS. Thereafter, according to Individual A and Rock Island County court records, Individual A and Minor Child A resided in East Moline, Illinois.

8. Rock Island County court records show that, on or about June 10, 2014, Individual A filed a petition in the Circuit Court of Rock Island County seeking dissolution of her marriage to GLAUS.

9. On or about August 13, 2014, a Rock Island County judge awarded temporary custody of Minor Child A to Individual A, and ordered that GLAUS, the child's father, was

[1] Rock Island County court records reflect that the relationship and dissolution proceedings between GLAUS and Individual A may be described as acrimonious. However, Individual A's information has thus far proven reliable and credible, and has been corroborated by court records, statements from the attorney who represents Individual A in the dissolution proceedings, and court-monitored email communications with GLAUS that her attorney provided to law enforcement and which she and GLAUS were ordered to use when scheduling GLAUS's visitation with Minor Child A. Additionally, ARDC website records and federal court records indicate that Individual A's attorney has a federal drug conviction for which he received a sentence of imprisonment, followed by a supervised release term. According to the ARDC website, the attorney was disbarred on consent following his conviction, but thereafter received an order of reinstatement.

permitted no more than three days, or 72 hours, of visitation rights with Minor Child A per week. According to a review of Rock Island County court records, this was the last order entered by the court regarding custodial rights.

10. As part of the proceedings, GLAUS and Individual A were ordered to communicate with each other only via the website *MyFamily Wizard*, a court-approved email program that was to be used for communications between GLAUS and Individual A, including when scheduling GLAUS's custodial visits. According to *MyFamily Wizard* communications provided by Individual A's attorney, at approximately 2:49 p.m. on June 1, 2016, GLAUS sent Individual A the following email: "I will pick [Minor Child A] up at your church tomorrow at 8 or 9 am if that's OK with you. By doing this [Minor Child A] and I receive our full 3 days together. Please confirm. Thanks." Thereafter, according to Individual A, GLAUS and Individual A would exchange custody of Minor Child A in a church parking lot in Moline, Illinois, and GLAUS would have temporary custody of Minor Child A for up to a 72-hour period.

**B. <u>Report of Unlawful Visitation Interference by GLAUS</u>**

11. On or about June 19, 2016, Individual A filed a police report with the East Moline, Illinois Police Department alleging that GLAUS had failed to return Minor Child A to Individual A, the custodial parent, after visitation that began on June 16, 2016. In summary, Individual A told police that, pursuant to the temporary custody order concerning Minor Child A, she and GLAUS exchanged Minor Child A, age 6, in the church parking lot in Moline, Illinois, at approximately 9:00 a.m. on June 16, 2016. According to Individual A, GLAUS then took custody of Minor Child A and put the child inside his vehicle.

12. Consistent with the August 13, 2014 temporary custody order, which stated that GLAUS was permitted no more than three days, or 72 hours, of visitation per week with Minor Child A, Individual A stated that GLAUS was to return Minor Child A to Individual A at approximately 9:00 a.m. on June 19, 2016. However, Individual A reported to the East Moline Police Department that GLAUS failed to return Minor Child A to Individual A as required by the temporary custody order. *MyFamily Wizard* website records provided by Individual A show that Individual A attempted to contact GLAUS after GLAUS failed to timely return Minor Child A.

13. According to police reports, on or about June 20, 2016 -- four days after the June 16, 2016, meeting in the church parking lot where GLAUS took custody of Minor Child A, the East Moline Police Department detective received a phone call from Individual A's attorney. The attorney reported that GLAUS could not be reached by phone or email, and that Minor Child A had not been returned to Individual A as required by the temporary custody order. Additionally, *MyFamily Wizard* website records show that between approximately 9:21 a.m. on June 19, 2016, and June 25, 2016, Individual A continued to contact GLAUS via *MyFamily Wizard* to inquire about Minor Child A's return, but no response from GLAUS was received.

14. On or about June 20, 2016, the East Moline Police Department received a state arrest warrant for GLAUS for the offense of kidnapping.

### C. <u>Search Warrant Executed at the GLAUS Residence</u>

15. On or about June 20, 2016, according to an East Moline Police Department detective, the Moline Police executed a state search warrant at the last known address of GLAUS, located in Moline, Illinois. According to the same detective, during the resulting search, the apartment was found to be vacant, and all possessions had been removed. When interviewed that day, building management and the maintenance manager, both of whom were

familiar with GLAUS, told police that they had recently spoken to GLAUS, and GLAUS had told them that he was in the United States in an effort to gain custody of Minor Child A.

### D. GLAUS's Submission of a Fraudulent Expedited Passport Application for Minor Child A

16. During this investigation, law enforcement obtained United States Department of State records concerning a passport application on behalf of Minor Child A (Form DS-11) and a Statement of Exigent Circumstances (Form DS-5525) that DANIEL RAYMOND GLAUS submitted in May 2016. The Form DS-11 reflects that it was submitted in person to a passport acceptance agent in Davenport, Iowa, on or about May 26, 2016. On their face, the Form DS-11 and Form DS-5525 also appear to contain GLAUS's signature and set forth identifying information for GLAUS and Minor Child A. The identifying information for Minor Child A was consistent with information provided by Individual A, and the identifying information for GLAUS was consistent with information that appears on GLAUS's passport book. On the Form DS-5525, GLAUS declared that his "ex-wife, [Individual A] has given up on maintaining contact with son and ex-husband....She is somewhere in Myanmar living with ex-boyfriend." Additionally, according to the State Department records, GLAUS attached to the passport application a purported Rock Island County Circuit Court Order, styled "Final Judgment of Dissolution of Marriage," which stated the following:

> IT IS FURTHER ORDERED, ADJUDGED, & DECREED that as evidence has been entered by counsel and accepted by the court indicating that [Individual A] has returned to her country of citizenship Myanmar, exact whereabouts unknown for at least four (4) months. The court finds that this leaving constitutes an abandonment of the case at hand.
>
> THEREFORE, Sole Legal and Physical Custody of the minor child, [Minor Child A] is awarded to Respondent / Counter-Petitioner, Daniel R. Glaus. Mr. Glaus shall be responsible for all the care of and all decisions relating to the welfare of [Minor Child A] as his Legal Guardian.

> ADDITIONALLY IT IS ADJUDGED AND ORDERED that [Individual A's] return to her home country and subsequent failure to maintain any contact with her attorney or any other persons involved in this case constitutes a complete abandonment of her minor child. Plaintiff / Counter-Respondent [Individual A] has therefore permanently relinquished all further claims to custody of minor child [Minor Child A].

On its face, the purported court order appears to have been signed by the state court judge presiding over GLAUS's divorce case and notarized by a State of Illinois notary public working in the Rock Island County Circuit Court clerk's office. However, the judge and the notary whose signatures appear on the purported order were interviewed during this investigation, and they have stated that their signatures were forged.

17. On the Form DS-11 that GLAUS submitted on behalf of Minor Child A, GLAUS also claimed that Minor Child A had been issued a previous United States passport that had since been lost. GLAUS also stated on Form DS-11 that he was going to be visiting Spain, Italy, and Myanmar. However, according to Individual A, she has the original passport that Minor Child A was issued.

18. According to State Department records, Minor Child A's passport was approved and sent to GLAUS in Moline, Illinois, by overnight mail. State Department records indicate that the passport was delivered on or about June 10, 2016.

### E. <u>Investigation Conducted at O'Hare International Airport</u>

19. On or about June 20, 2016, the East Moline Police Department contacted HSI and requested assistance in identifying any international travel recently undertaken by GLAUS and Minor Child A. I was provided with a number of known photographs of GLAUS and Minor Child A that were provided by the East Moline Police Department.

20. On or about June 20, 2016, I conducted database queries in a CBP computer system that contains information pertaining to international border crossings. According to the database queries, both GLAUS and Minor Child A were booked on a June 16, 2016 China Eastern Airlines flight that departed from Chicago O'Hare International Airport, located in the Northern District of Illinois, to Shanghai, China.

21. On or about June 21, 2016, I spoke to employees at the China Eastern Airlines ticket counter located at the International Terminal, Terminal 5, at Chicago O'Hare International Airport. I was provided with ticketing information that confirmed that both GLAUS and Minor Child A had boarded China Eastern Airlines Flight 718 on June 16, 2016, the same date that GLAUS began visitation with Minor Child A in Moline. The ticketing information indicated that both GLAUS and the minor child then connected on China Eastern Airlines flight 725 from Shanghai, China to Hong Kong. According to documents produced by China Eastern Airlines, GLAUS had purchased the tickets through Colville Travel located in Colville, Washington.

22. Colville Travel records show that GLAUS purchased one-way airline tickets for himself and Minor Child A on or about June 11, 2016, the day after GLAUS had received Minor Child A's expedited passport via overnight delivery.

23. Between June 21 and June 22, 2016, I reviewed surveillance footage captured on June 16, 2016 for three areas inside the International Terminal, Terminal 5, at Chicago O'Hare International Airport: the China Eastern Airlines ticket counter; the Transportation Security Administration checkpoint inside Terminal 5; and the boarding door located at Gate M16, the designated departure gate for China Eastern Airlines that day.

24. During my review of the relevant surveillance footage from June 16, 2016, I observed a white male and a young child arrive at the China Eastern Airlines ticket counter at

approximately 1:43 p.m. on June 16, 2016. From known photographs of GLAUS and Minor Child A, I recognized the male in the surveillance video as DANIEL RAYMOND GLAUS and the young child in the surveillance video as Minor Child A. Furthermore, the video shows the same two individuals near the entrance of the TSA security checkpoint in Terminal 5 at approximately 1:58 p.m. that afternoon. During a review of the surveillance footage from Gate M16, I observed the same two individuals enter into the boarding door at Gate M16 and walk toward the aircraft at approximately 2:34 p.m. According to airport personnel, the flight into which GLAUS and Minor Child A entered on June 16, 2016 was China Eastern Airlines 718.

25. On or about June 21, 2016, I took still frame photographs of the two individuals in the surveillance footage and forwarded those images to the East Moline Police Department detective, who met with Individual A later that day. At that time, Individual A confirmed that the two individuals in the images were DANIEL RAYMOND GLAUS and Minor Child A.

**F. <u>GLAUS's Detention in Thailand</u>**

26. According to information provided by the United States Diplomatic Security Service, GLAUS and Minor Child A arrived at Bangkok International Airport in Thailand on or about June 18, 2016, via a Hong Kong Airlines flight. According to the DSS, upon arrival in Thailand, GLAUS applied for a 30-day visa and an extension for 90 days.

27. On or about June 26, 2016, the State Department revoked GLAUS's United States passport and contacted Thai authorities for help in recovering Minor Child A.

28. On or about July 10, 2016, GLAUS was held by Thai immigration officials in Bangkok on Thai immigration violations. Minor Child A was recovered at that time and placed on a flight back to the United States, escorted by a State Department employee.

29. On or about July 12, 2016, with the assistance of Thai authorities and DSS personnel, Minor Child A arrived at Chicago O'Hare International Airport and was re-united with his custodial parent, Individual A.

## III. CONCLUSION

30. Based on the foregoing, I believe that there is probable cause to believe that, on or about June 16, 2016, DANIEL RAYMOND GLAUS committed the offense of International Parental Kidnapping, in violation of Title 18, United States Code, Section 1204(a).

FURTHER AFFIANT SAYETH NOT.

Daniel B. Nugent
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on this 11 day of August, 2016.

Honorable Michael T. Mason
United States Magistrate Judge